**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AMBASE CORPORATION, | : |
| Plaintiff, | : |
| | : |
| v. | :      3:08-cv-651 (WWE) |
| | : |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

**MEMORANDUM OF DECISION ON VARIOUS MOTIONS**

Plaintiff AmBase Corporation brings this action against defendant United States

of America seeking a refund of overpaid federal taxes.  Now pending before the Court

are three motions: (1) defendant's motion to dismiss for lack of subject matter

jurisdiction (Doc. #29); (2) plaintiff's motion for partial summary judgment (Doc. #32);

and (3) defendant's motion to strike plaintiff's motion for partial summary judgment

(Doc. #37).

**BACKGROUND**

Because the motion to dismiss is made pursuant to Rule 12(b)(1), the Court will

review the complaint and the parties' exhibits submitted outside the pleadings.  See

Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir.

2000).

Plaintiff AmBase Corporation is a corporation organized in Delaware with a

principal place of business in Connecticut.  It filed a consolidated federal income tax

return for an affiliated group of member corporations for each taxable year referenced

in the complaint.

This action arises from a net operating loss deduction generated in the taxable

year ending December 31, 1992 on plaintiff's consolidated federal income tax return, which was carried back to taxable year 1989.  The net operating loss resulted in a reduction in plaintiff's 1989 tax liability and was due, in part, from bad debt losses incurred by plaintiff's wholly-owned subsidiary Carteret Savings Bank F.A. and its subsidiaries ("Carteret") and by Carteret's successor, Carteret Federal Savings Bank.

In August 1988, plaintiff acquired all of the stock of Carteret Bancorp, Inc., of which Carteret was a wholly-owned subsidiary.  After the acquisition by plaintiff, Carteret Bancorp and Carteret joined plaintiff and plaintiff's other subsidiaries in the filing of plaintiff's consolidated federal income tax return, with plaintiff as the common parent.

On September 17, 1990, pursuant to an extension, plaintiff filed its original consolidated federal income tax return for taxable year 1989 reporting and fully satisfying the tax liability reported thereon of $19,769,187.

On December 4, 1992, Carteret was put into conservatorship by the United States Office of Thrift Supervision.  On the same day, the Resolution Trust Corporation and the Federal Deposit Insurance Corporation seized Carteret's office premises and business records.  As part of the conservatorship, the federal regulators created a new legal entity, Carteret Federal Savings Bank ("New Carteret"), as successor to Carteret. All the assets and liabilities of Carteret were transferred to New Carteret.  New Carteret was then included in plaintiff's affiliated group for tax purposes.

On August 30, 1993, pursuant to an extension, plaintiff filed its original consolidated federal income tax return for taxable year 1992.  On the original consolidated return for taxable year 1992, plaintiff reported a bad debt deduction of

$56,005,961.

After 1995, plaintiff received information regarding Carteret and New Carteret that would enable it to increase the bad debt deduction to which it was entitled for taxable year 1992.  Based on this information, plaintiff alleges that it is entitled to a bad debt deduction in the amount of at least $125,253,834 for taxable year 1992.

Plaintiff claims that on June 6, 1995, it filed an amended consolidated federal income tax return protecting its right to refunds for taxable year 1989, to reflect the carryback of net operating losses resulting from other taxable years, including 1992.  In June 1995, plaintiff also made an informal claim for refund for taxable year 1989 to reflect the carryback of net operating losses resulting from other taxable years, including 1992.  The Internal Revenue Service ("IRS") then examined plaintiff's consolidated return for taxable year 1989 and assessed taxes and interest, which plaintiff has paid in full.

Plaintiff further claims that on March 14, 2000, it timely filed an amended consolidated federal income tax return for taxable year 1989.  This alleged amended tax return reflected the net operating loss carryback from taxable year 1992 to taxable year 1989 that resulted from the increased bad debt losses in taxable year 1992.  In it, plaintiff claimed a refund in the amount of $10,741,501 for taxable year 1989, plus assessed interest and statutory interest.

On February 23, 2005, plaintiff executed a form 2297 waiver resulting in the disallowance of its 1989 refund claim.  Plaintiff and the IRS timely entered a form 907 Agreement to Extend the Time to Bring Suit for Taxpayer's Claim regarding taxable year 1989, allegedly extending the time to bring this action until May 2, 2008.

Plaintiff seeks recovery of $7,162,875 in federal income tax payments made for the taxable year 1989.  This sum represents the increased net operating loss deduction attributable to the increase in its bad debt deduction for 1992 to $125,253,834.  At this point, no part of the amount demanded has been credited, remitted, refunded or repaid to plaintiff.

**DISCUSSION**

A motion to dismiss for lack of subject matter jurisdiction may be made at any time.  Plaintiff, as the party asserting subject matter jurisdiction, has the burden of demonstrating that it exists.  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  When evaluating a motion under Rule 12(b)(1), the court "must determine whether or not the factual predicate for subject matter exists."  Tilley v. Anixter Inc., 283 F. Supp. 2d 729, 733 (D. Conn. 2003).  In a factual attack on the court's jurisdiction, there is no presumptive truthfulness to the plaintiff's factual allegations.  Russo v. City of Hartford, 184 F. Supp. 2d 169, 178 (D. Conn. 2002).  Therefore, the court may consider evidence including affidavits and other materials outside the complaint.  See Kamen v. AT&T Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

Contrary to plaintiff's contention, defendant's evidentiary submissions do not convert its motion under Rule 12(b)(1) into one for summary judgment under Rule 56.  A conversion of this type is only done when the original motion is made under Rule 12(b)(6).  See Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

4

summary judgment under Rule 56.).[1]  The Court will not view defendant's motion under

the lens of Rule 56 and will therefore deny plaintiff's motion for partial summary

judgment (Doc. #32).  The Court will not, however, strike the motion for partial summary

judgment (Doc. #37), but will review it, construing it as an opposition to the motion to

dismiss.

Defendant argues that the Court lacks jurisdiction over this action because

neither 26 U.S.C. § 6511(d)(1) nor 26 U.S.C. § 6511(a) establish proper jurisdiction in

this matter.  Plaintiff responds that the Court has jurisdiction pursuant to both

subsections of section 6511 as well as pursuant to 26 C.F.R. §§ 1.593-5(b)(2) and

1.593-6A(a)(1).

The United States is immune from suit except to the extent it has "unequivocally"

waived its sovereign immunity, Lane v. Pena, 518 U.S. 187, 192 (1996), or it consents

to be sued.  When sovereign immunity is waived, "the terms of its consent to be sued in

any court define that court's jurisdiction to entertain the suit."  United States v. Testan,

424 U.S. 392, 399 (1976).  The "limitations and conditions upon which the Government

consents to be sued must be strictly observed and exceptions thereto are not to be

implied."  Soriano v. United States, 352 U.S. 270, 276 (1957).

Congress provides a limited waiver of the United States' sovereign immunity for

an action in which a plaintiff seeks a refund of a tax overpayment.  Pursuant to 28

U.S.C. § 1346(a)(1), the district court shall have subject matter jurisdiction over:

---

[1]      Plaintiff's citation to Global Network Communs., Inc. v. City of New York,
458 F.3d 150 (2d Cir. 2006) is misplaced.  That case involved the review of a ruling on
a Rule 12(b)(6) motion.  Defendant's motion is made under Rule 12(b)(1).

> Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or ... any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).

Section 166 of the Internal Revenue Code permits a taxpayer to take a deduction for a debt that becomes worthless within that tax year.  26 U.S.C. § 166(a)(1).  Under section 6511(d)(1), "the limitation period for filing a refund claim is extended to seven years from the date the tax return was to be filed if the refund relates to an overpayment of tax resulting from the deduction of a debt which became worthless."  Moretti v. Commissioner, 77 F.3d 637, 646 (2d Cir. 1996); 26 U.S.C. § 6511(d)(1)(A).  A claim brought after the lapse of the seven-year period is outside the district court's jurisdiction.  Koss v. United States, 69 F.3d 705, 707 (3d Cir. 1995); see also United States v. Dalm, 494 U.S. 596, 602 (1990).

Under section 166, taxpayers generally use the "direct charge-off method" to recognize amounts which they deem to be uncollectible.  Since the enactment of the Tax Reform Act of 1986, banks like AmBase, unlike other taxpayers, may use the reserve method under sections 585 and 593 of the Internal Revenue Code to estimate the amount that a taxpayer has of uncollectible receivables.  The reserve method allows a taxpayer to set up an allowance for bad debts and enables it to take a deduction for the additional amount of capital that the taxpayer determines should be reserved for the year as uncollectible.  A taxpayer using the reserve method, at the time it files its return, deducts an amount equal to the addition to bad debt reserves necessary to reach the amount it determines should be included in its reserves as uncollectible.  The amount of

the reserve reflects the amount of debts held by the taxpayer anticipated to become

worthless.  As the Supreme Court explained:

> Under the reserve method of accounting a taxpayer includes in his income the full face amount of a receivable on its creation and adjusts at the end of each taxable year the reserve account so that it equals that portion of current accounts receivable that is estimated to become worthless in subsequent years.  Any additions necessary to increase the reserve are currently deductible.  When an account receivable becomes worthless during the year, the reserve account is decreased and no additional bad debt deduction is allowed.

Nash v. United States, 398 U.S. 1, 2 (1970).

When a taxpayer using the reserve method charges off worthless debts, the

debts are charged off against the reserve account and not deducted directly from its

income.  While the worthless debt is not directly charged to income, it can have an

effect on income if it does not reduce the ultimate reserve for bad debts because an

amount equal to the charged-off debt must be added to additions to bad debt to bring

the reserve back up to the appropriate level.

AmBase employed the experience method to calculate to what extent

reasonable additions to its reserve would have to be made to bring the reserve amount

to the level determined to be necessary to satisfy estimated debts that would become

uncollectible in the future.  This determination was made at the time the return was

filed.  The Internal Revenue Code states that the:

> The amount determined under [the experience method] for a taxable year shall be the amount necessary to increase the balance of the reserve for losses on loans (at the close of the taxable year) to the greater of –
>
> > (A)   the amount which bears the same ratio to loans outstanding at the close of the taxable year as

7

(i) the total bad debts sustained during the taxable year and the 5 preceding taxable years..., adjusted for recoveries of bad debts during such period, bears to (ii) the sum of the loans outstanding at the close of such 6 or fewer taxable years, or

(B)    the lower of (i) the balance of the reserve at the close of the base year, or (ii) if the amount of loans outstanding at the close of the taxable year is less than the amount of loans outstanding at the close of the base year, the amount which bears the same ratio to loans outstanding at the close of the taxable year as the balance of the reserve at the close of the base year bears to the amount of loans outstanding at the close of the base year.

26 U.S.C. § 585(b).

Characterizing plaintiff's estimation process, the United States represents that AmBase based its bad debt experience factor on its outstanding debts and the corresponding chargeoffs.  Then, it applied that calculation to its then-current outstanding debt to arrive at the maximum possible reserve for bad debts and adjusted that number to arrive at the level that its actual reserve should be.

**I.      Regulations on Bad Debt Deductions**

Plaintiff first contends that 26 C.F.R. §§ 1.593-5(b)(2) and 1.593-6A(a)(1) both permit and, in fact, require plaintiff to amend its bad debt reserve deduction reported on its tax return.  In support of this position, plaintiff cites a Tax Court ruling stating, "there is no authority or discretion statutorily reserved to [the IRS] to deny [a taxpayer's] reserve addition election, so long as the taxable year is open." The Home Group, Inc. v. Commissioner, 91 T.C. 265, 270 (1988).

Unfortunately for plaintiff, the 1992 tax year does not remain open indefinitely.

Plaintiff cannot attempt to amend its original 1992 return almost fifteen years after it was filed absent some legislative authority.  See 26 U.S.C. § 6501.  Plaintiff cites no statute or case law that extends the permissible time for amending a tax return for so long or that holds open a taxable year for such a long time.  Therefore, the regulations cannot serve as the basis for granting the Court jurisdiction over plaintiff's claim.

II.     **Seven Year Statute of Limitations with Respect to Bad Debts and Worthless Securities**

A taxpayer using the reserve method can avail itself of the seven year statute of limitations of section 6511(d)(1)(A).  See Smith Elec. Co. v. United States, 198 Ct. Cl. 644, 648 (Ct. Cl. 1972).  By its language, however, section 6511(d)(1) applies only to situations where a debt has become worthless.  Section 6511(d) permits a taxpayer who takes a bad debt deduction but later learns that such debt became worthless to claim a refund up to seven years later.  See Armstrong v. United States, 681 F.2d 774, 776 (Ct. Cl. 1982) ("The 7-year period was designed to prevent possible prejudice to those taxpayers whose otherwise legitimate deduction might be placed in jeopardy by the general 3-year period."). The legislative history behind section 6511(d) recognizes the need "to protect a taxpayer for whom 'later evidence' discloses a miscalculation about the year in which a debt becomes worthless."  See Indiana Nat'l Corp. v. United States, 980 F.2d 1098, 1102 (7th Cir. 1992) (citing H.R. Rep. No. 2333, 77th Cong., 1st Sess., reprinted in 1942-2 C.B. 372, 408).

Courts have rejected applying section 6511(d)'s statute of limitations to instances where the taxpayer seeks to amend a tax return upon discovering that his estimate was not accurate.  See Wengel, Inc. v. United States, 306 F. Supp. 121, 123 (E.D. Mich.

1969).  Further, a taxpayer may not increase its debt reserve retroactively.  <u>Rio Grande</u>

<u>Bldg. & Loan Ass'n v. Comm'r</u>, 36 T.C. 657, 664 (1961) ("[A] taxpayer is not to be

permitted to enlarge its reserve account retroactively, based upon subsequent events

which later support the view that the reserve is inadequate.").

AmBase asserts that its "claim depends solely on facts that existed at the close

of the taxable year."  This contention does not lend support for applying the seven-year

statute of limitations.  If plaintiff has not discovered new evidence that a debt became

worthless, then section 6511(d) cannot apply and cannot create jurisdiction in this

matter.

## III.    Three Year Statute of Limitations for Filing a Claim for Refund

Both parties agree that AmBase had until March 31, 1998 to file a claim for a

refund under 26 U.S.C. § 6511(a).  Section 6511(a) provides that a "[c]laim for credit or

refund of an overpayment of any tax ... in respect of which tax the taxpayer is required

to file a return shall be filed by the taxpayer within 3 years from the time the return was

filed...."  26 U.S.C. § 6511(a).

AmBase claims that three events toll the statute of limitations rendering this

action timely.  It asserts first that it filed a timely claim for refund in June 1995.  Second,

it contends the FDIC filed claims for refund on behalf of Carteret in September 1996.

Finally, it maintains that it filed informal notices to put the IRS on notice that it would

seek a refund.  Each of these arguments fails.

### A.    June 1995 Claim

AmBase asserts that it filed a protective claim for refund, signed and dated June

6, 1995.  It admits, however, that only "substantial circumstantial evidence" supports this claim.  According to AmBase, a copy of the claim was placed in an internal file with AmBase's original tax returns for the tax years 1988 and 1989.  AmBase further represents that the only documents in this file were filed with the IRS.  AmBase seeks limited discovery on whether this protective claim was actually ever filed with the IRS because, as it admits, this circumstantial evidence is insufficient to support jurisdiction.

An income tax return is generally deemed filed on the date when the return is received by the IRS.  See Weisbart v. United States Dep't of Treasury, 222 F.3d 93, 96 (2d Cir. 2000); 26 U.S.C. § 7502.  The exceptions to this rule are where a postmark stamped on a return received by the IRS indicates a different date or when a return is sent via registered mail.  See Deutsch v. Comm'r, 599 F.2d 44, 46 (2d Cir. 1979); Washton v. United States, 1993 U.S. Dist. LEXIS 2863, *8-9 (D. Conn. Feb. 12, 1993); 26 U.S.C. § 7502.  The onus is on the taxpayer to keep proper records of its tax return. See Halle v. Comm'r, 175 F.2d 500, 502 (2d Cir. 1949) ("Implicit in the working of the system is an obvious duty of keeping proper records imposed on the taxpayer.").

AmBase cannot sufficiently establish that it filed a claim in June 1995.  Its circumstantial evidence is insufficient to demonstrate that the IRS received the protective claim.  Therefore, the statute of limitations cannot be tolled because of the protective claim.

**B.      FDIC's September 1996 Protective Claim**

Where a financial institution is subject to a receivership, the FDIC is permitted to file claims for refunds for carrybacks on behalf of a consolidated group that includes the receivership.  26 C.F.R. § 301.6402-7.  Plaintiff claims that the FDIC filed a timely

protective claim in September 1996 on behalf of the AmBase consolidated group and that such protective claim was supplemented in March 2000.  Combined, plaintiff asserted, the claim and the supplement serve to allow plaintiff to claim the refund for 1989.

A protective claim puts the IRS on notice when it (1) is in fact filed; (2) made in writing; and (3) "the matter set forth in the writing [is] sufficient to apprise the IRS that a refund is sought and to focus attention on the merits of the dispute so that an examination of the claim may be commenced if the IRS wishes."  Martin v. United States, 833 F.2d 655, 660 (7th Cir. 1987); see also United States v. Kales, 314 U.S. 186, 194-96 (1941).  The notice must be specific and cannot be generic.  As one commentator has observed "it has been held that the filing of a claim for another year or different period does not constitute an informal claim."  Michael I. Saltzman, IRS Practice and Procedure ¶ 11.08[2] (2009).

The protective claim is not before the Court at this time because plaintiff does not have it.  Plaintiff contends that with proper discovery of the IRS it will be able to submit it.  Plaintiff did submit two letters from the IRS to David Jones of Carteret Bancorp, Inc.  These letters indicate that the IRS received the purported claim on September 19, 1996 relating to the tax periods ending December 31, 1986, 1989, 1990 and 1991.  In these letters, the IRS stated that it could not process Carteret's claim because the supporting information was not complete.  Because the letters are not before the Court, the Court cannot review them to determine whether they meet the requirements of Martin.  As such, they cannot serve to establish jurisdiction at this juncture.

Even if these letters provided sufficient bases to find that the underlying protective claims met the requirements of Martin, jurisdiction would still not lodge. Plaintiff contends that the FDIC's claim for refund must have related to 1992 because the FDIC did not control Carteret until 1992.  At that point, the FDIC's authority to file a claim for 1989 was limited to carrybacks from 1992.

The IRS is permitted to examine a claim for refund which has been timely filed although it fails to state the ground upon which the demand is filed even when a wholly new claim would have been barred by the statute of limitations.  See United States v. Memphis Cotton Oil Co., 288 U.S. 62, 64 (1933).  The Court does not find Memphis Cotton applicable to this case.  Without reviewing the September 1996 claim, the Court cannot conclude that the claim even relates to the 1992 tax year and therefore, determine how Memphis Cotton and St. Joseph Lead Co. v. United States, 299 F.2d 348 (2d Cir. 1962), both cited by plaintiff, support its position.

Accordingly, on the present record, the Court cannot find that the September 1996 claim meets the requirements of a protective claim under Martin and cannot toll the statute of limitations under section 6511.

**C.     Informal Protective Claim**

Plaintiff additionally argues that it filed two timely informal protective claims by informing IRS personnel multiple times of its intent to file an amended return for 1992 and claim a carryback.

**1.     Contingent Claims**

The first alleged informal protective claim is an attachment to AmBase's

consolidated income tax return for 1992 filed on August 30, 1993.  This attachment

notified the IRS of AmBase's intent to exclude certain institutions from its consolidated

group.  At the bottom of this exhibit, AmBase wrote, "We reserve the right to review this

election when the Reg. § 1.597-4 becomes final."  AmBase received extensions of time

until April 30, 1997 to determine whether to elect to disaffiliate.  By letter dated April 28,

1997, AmBase notified the IRS of its decision not to elect to disaffiliate.  This decision

forced AmBase to file an amended 1992 return to reflect New Carteret's operations for

December 1992, which were omitted from the original return.  The April 28 letter,

plaintiff asserts, also informed the IRS of AmBase's intention to file the refund claim

necessary to implement the decision once it had received certain documents from the

IRS and the FDIC.

　　　　AmBase further maintains that in 1995, at the end of the IRS audit that included

tax year 1989, AmBase informed the IRS that amended returns may be necessary to

correct the carryovers and carrybacks to 1989 once the Tax Court litigation for 1987

was resolved.  Had AmBase lost this litigation, a 1989 carryover to 1987 could have

been disallowed, which would have made a carryback allowable from 1992 to 1989.

AmBase received documents from the IRS which, AmBase contends, indicate that

AmBase properly placed the IRS on notice that its 1989 tax liability could be changed

once certain contingencies related to carryovers and carrybacks to 1989 were resolved.

Specifically, defendant produced a Form 4451 History Sheet that stated in the IRS'

notes that "Taxpayer will be filing a protective claim Form 1120X for the years 8812 –

9112 with the service center to correct the NOL carrybacks and carry-forwards once a

decision is reached in tax court on the 1985 – 1987 years."  This note was made on

June 30, 1995.

### 2.    Law on Protective Claims

A protective claim is "filed to protect a right to receive a refund contingent on the

occurrence of a future event."  Saltzman, IRS Practice & Procedure ¶ 11.08[3].  A claim

may be made conditional upon the occurrence of a future event.  As stated by the

Supreme Court:

> The statement that upon the happening of the contingency the
> claim will be prosecuted is not inconsistent with the present
> assertion of it.  It is indeed an appropriate, if not the necessary,
> phraseology for the present assertion of an alternative claim
> with respect to which a taxpayer, in his presentation of an
> informal tax refund claim, should be in no less favorable
> position than the plaintiff in a suit at law who is permitted to
> plead his cause of action in the alternative.

Kales, 314 U.S. at 196.  Where a claim for refund is contingent or indeterminate until

some future point, a taxpayer must file a conditional claim before the expiry of the

statute of limitations to preserve its rights to a refund.  See Swietlik v. United States,

779 F.2d 1306, 1307 (7th Cir. 1985).

There are three elements of an informal claim.

> First, an informal claim must provide the Commissioner of the
> IRS with notice that the taxpayer is asserting a right to a
> refund.  Second, the claim must describe the legal and factual
> basis for the refund.  Finally, an informal claim must have
> some written component.

New England Elec. Sys. v. United States, 32 Fed. Cl. 636, 641 (Fed. Cl. 1995); see also

American Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920 (Ct.

Cl. 1963).  The written component may be satisfied by a writing made by the taxpayer

or the IRS.  See New England Elec. Sys., 32 Fed. Cl. at 643-44.

Plaintiff's submissions, which it asserts put the IRS on notice of its eventual claim for a refund for 1992, do not provide sufficient notice to qualify as contingent claims under the law.  None of these documents mention the 1992 tax return, nor do they assert that a refund would be requested for that year.  "It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer."  American Radiator, 318 F.2d at 920; see also Simon v. Doe, 463 F. Supp. 2d 466, 470 (S.D.N.Y. 2006).  The fact that plaintiff needed more time to determine whether it would disaffiliate New Carteret does not sufficiently or directly put the IRS on notice that a refund would be sought as to the 1992 tax year.  See Stoller v. United States, 444 F.2d 1391, 1393 (5th Cir. 1971) ("The Commissioner should not be left to his own devices in order to discover the precise nature of a taxpayer's claim and thus be placed in a position of having to hazard a guess.").  Kales, which plaintiff cites in support of its contingent protective claims, relies on the fact that the taxpayer explicitly discussed what the contingency is and how she would act should it come to pass.  See Kales, 314 U.S. at 195-96 (noting that taxpayer stated "that in the event of departmental revision of the valuation of the stock she 'will insist' on a higher valuation and will claim the right to a refund...").  There is no explicit discussion of the contingencies and future plans in AmBase's documents that would be analogous to what the Kales Court observed.

**D.     June 2000 Formal Claim**

In view of the fact that the claims that AmBase relies upon for tolling the statute of limitations – the June 1995 claim, the September 1996 claim and the informal

protective claims – were either not properly filed or not correctly asserted, the formal refund claim in March 2000 could not have rectified an incomplete previous claim and could have no legal effect.

In light of the Court's finding that there has been no waiver of the government's sovereign immunity for plaintiff's claim, this Court has no jurisdiction to hear this matter. The Court will, however, permit plaintiff forty-five days from the date of the filing of this ruling to conduct limited discovery into the June 1995 and September 1996 claims because the claims may help plaintiff establish subject matter jurisdiction in this matter.

## CONCLUSION

For the foregoing reasons, the Court conditionally GRANTS defendant United States' motion to dismiss (Doc. #29) and DENIES plaintiff AmBase's motion for partial summary judgment (Doc. #32) and defendant's motion to strike (Doc. #37).

Dated at Bridgeport, Connecticut, this 15th day of June, 2010.


　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　Warren W. Eginton
　　　　　　　　　　　　　　　Senior United States District Judge