IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMBASE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:08CV651-WWE |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO
SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL**

In its Memorandum Order dated June 15, 2010, the Court permitted plaintiff AmBase Corporation ("AmBase") to conduct limited discovery with respect to a protective claim for refund that the Federal Deposit Insurance Corporation ("FDIC") filed on behalf of members of AmBase's consolidated group for tax year 1989. The protective claim was not before the Court because AmBase had not been permitted discovery on this matter prior to consideration of the motions. Doc. 42 at p. 13. Pursuant to the Court's Order, AmBase engaged in limited discovery and the FDIC produced a copy of the protective refund claim. The protective claim was timely filed and asserts, among other things, a right to carryback claims arising from tax year 1992 to tax year 1989 based on bad debt deductions. The IRS never disallowed the claim, and AmBase perfected the claim in March 2000. The timely protective claim as properly supplemented satisfies all the criteria for a valid refund claim as explained by the IRS in General Counsel

Memorandum ("GCM") 38786.[1]  Accordingly, AmBase is moving the Court to set aside its conditional order dismissing the case.

### *Statement of Facts*

The FDIC assumed authority over the receivership of Carteret Federal Savings Bank as of January 1, 1996.[2]  Doc. 30-2 ¶ 13.  As recognized in the Court's Order, the FDIC has the authority to file refund claims on behalf of failed financial institutions and their parent corporations.  26 C.F.R. § 301.6402-7(a), (b)(3) and (4), (e)(1).  On or about September 13, 1996, the FDIC filed a protective refund claim with the Internal Revenue Service asserting potential carryback losses from 1992 to earlier tax years, including tax year 1989.  Mitchell Decl. Ex. 1.  In the transmittal letter covering the claims, the FDIC explained that the claim was being filed pursuant to GCM 38786 in order "to protect the statute of limitations" and that the claims "may also be amended after the expiration of the statute of limitations, should certain information requiring this amendment be discovered."  *Id*. (AMB-TX-001626.)  The FDIC included with its claim amended returns for each potential carryback tax year, including 1989, and labeled each one as a "PROTECTIVE CLAIM."  *Id*. (e.g., AMB-TX-001627 - 001637.)  The amended returns incorporated by reference a statement of grounds and authorities which asserted five reasons supporting a potential refund based on a carryback deduction from 1992 to 1989.

---

[1] A copy of GCM 38786 (Aug. 13, 1981), which the FDIC cited in its protective refund claim, is attached for the Court's convenience.  Another, more current IRS explanation of the standards for valid supplementation of protective refund claims after the statute of limitations has expired is Chief Counsel Advisory ("CCA") 200848045 (Jul. 17, 2008), which also is attached.  AmBase is not citing the GCM and CCA as authorities (*see* 26 U.S.C. § 6110(k)(3)), but rather to demonstrate the IRS's position as to the required criteria for a valid protective claim and supplement.  *See Rowan Cos. v. United States*, 452 U.S. 247, 261 (1981).

[2] Previously, from December 4, 1992, through December 31, 1995, the receivership was under the authority of the Resolution Trust Corporation.

*Id.* (AMB-TX-001639 - 001640.)  Three reasons were based on the treatment of bad debt deductions.  *Id.*[3]  In response to the FDIC's protective claims, the IRS sent a letter dated February 6, 1997, in which the IRS acknowledged that it received the claims on September 19, 1996, and requested more information.  Mitchell Decl. Ex. 2.  The IRS never disallowed the claim.  Mitchell Decl. Ex. 3.

---

[3] The three grounds were as follows:

. . .

(3)  Savings institutions that fail the "60% asset test" of IRC 7701(a)(19) are not eligible to use the reserve method of accounting for bad debts under IRC 593.  Such an institution is treated as a bank and therefore must compute its'[sic] bad debts under IRC 585.  If the institution is treated as a "large bank", as defined in IRC 585(c), it must compute its bad debts using the specific charge-off method under IRC section 166.  Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback under IRC 172(b)(1)(D), instead of the usual 3.  This refund claim includes the carryback of the 1992 losses eligible for a 10 year carryback period under IRC 172(b)(1)(D) to the taxable year of the refund as a result of any required use of the specific charge-off method of accounting for bad debts.

(4)  Under certain conditions, (such as the occurrence of a change in underlying facts under Treas. Reg. 1.446-1(e)(2)(ii)(b)), banks using the reserve method for deducting bad debts under IRC 585(b) can switch to the specific charge-off method under IRC 166.  Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback, as allowed under IRC 172(b)(1)(D), instead of the usual 3.  This refund claim represents the carryback of the 1992 losses to the taxable year of the refund to the extent such losses are eligible a 10 year carryback under IRC 172(b)(1)(D) as a result of switching to the specific charge-off method of accounting for bad debts.

(5)  Under IRC 6511(d), a taxpayer has 7 years to determine whether a debt or a security has become worthless.  In the case of a failing financial institution, management typically refrains from charging off their bad debts in order to artificially retain capital and keep government regulators at bay.  This amended return reflects adjustments to deduct debts or securities in the taxable year in which such debts actually became worthless.

Mitchell Decl. Ex. 1 (AMB-TX-001639 - 001640).

As explained below, a defective general protective claim filed before the statute of limitations has expired can be supplemented and perfected with more specific grounds at any time before the IRS formally disallows the claim. A valid supplementation can occur even after the statute of limitations for filing a claim has expired. The supplemental claim perfecting the original defective claim relates back to, and its timeliness is determined by, the filing of the original defective protective claim. The IRS treated the filing by the FDIC as a general protective claim and invited the taxpayer to supplement the claim with more information so that it could be processed. AmBase complied with the IRS's request on March 15, 2000, and perfected the defective protective claim by filing a supplement that asserts AmBase's right to a carryback arising from bad debt deductions. Doc. 30-14. Because the March 15, 2000 claim is a valid supplement to the timely filed general protective claim, this Court has jurisdiction in this case.

### *Argument*

***The FDIC's protective claim was properly perfected by AmBase*** – The procedural regulations at 26 C.F.R. § 301.6402-2(b) provide generally that a tax refund claim should "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." There are a number of situations in which the formal refund claim standards of 26 C.F.R. § 301.6402-2 are not required to be satisfied. One of those situations is where a taxpayer files a defective protective claim before the expiration of the statute that does not satisfy the regulations and then supplements the protective claim with more specific information before the IRS disallows the claim. In GCM 38786, the IRS explained that this type of claim (*i.e.*, the original claim filed to protect the statute) "can still be valid for purposes of the period of limitations even though the claim itself does not even come

close to setting forth enough facts to establish that the taxpayer has actually overpaid its taxes." GCM 38786 (Aug. 13, 1981)(citing *United States v. Kales*, 314 U.S. 186, 194). The initial filed protective claim will be respected as timely and valid provided that (1) the taxpayer amends the claim to perfect it with information that is germane to the first claim, and (2) the taxpayer makes the perfecting amendment before the IRS disallows the claim. *See*, *e.g.*, *Pink v. United States*, 105 F.2d 183 (2d Cir. 1939). If these two conditions are met, the amendment relates back in time to the filing of the first defective claim for purposes of determining whether it was timely filed. *Id.* As noted by the IRS in both GCM 38786 and CCA 200849045, whether these standards are met is liberally construed in favor of the taxpayer.

In this case, there is no dispute that the FDIC filed a protective claim for the 1989 tax refund based on a 1992 carryback before the statute of limitations had expired.[4] Moreover, the defendant has admitted that the IRS did not disallow the claim for refund. (Mitchell Decl. Ex. 3.) Thus, the only question is whether the supplement that AmBase made to the claim in March 2000, is germane to the first claim that was timely filed in 1996. The test for determining whether a supplement is germane to the first claim, and thus a part of that claim, has been stated as follows:

> Whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper.

---

[4] As noted by the Court in its June 15, 2010 Order, the 3-year statute of limitations for filing a refund claim for tax year 1992 and for earlier tax years, including 1989, based on loss carrybacks from tax year 1992, expired no earlier than March 31, 1998.

*Pink*, *supra*, 105 F.2d at 187 (citing *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933) and *Bemis Bros. Bag Co. v. United States*, 289 U.S. 28 (1933), among other cases). Another court has explained that the purpose of the rule is to make sure that the IRS has notice of the general nature of the claim in order to protect it from stale claims, regardless of whether the IRS actually examines the first claim. *See Ryan v. Harrison*, 146 F. Supp. 671, 673-674 (N.D. Ill. 1956). The *Ryan* court went on to explain that "[i]t is considered that such notice has been given when the examination necessary to acceptance or rejection of the first claim would necessarily reveal the factual situation to which the second claim relates." *Ryan*, 146 F. Supp. at 673.

The protective claim filed in 1996 was based in part on a carryback from 1992 to 1989 generated by Carteret's potential bad debts. This is exactly the same basis for the supplemented claim filed in March 2000. Thus, although the 1996 protective claim may have been defective, it was properly supplemented by the March 2000 claim. More specifically, the general protective claim filed in September 1996, asserted three potential grounds for recovery that directly implicated the charge-off and worthlessness of bad debts that potentially could generate loss carrybacks from 1992 to earlier tax years, including 1989. An examination of this general claim of bad debts necessarily would encompass the facts relating to the bad debts that are included in the March 2000 supplemental claim and are at issue in this case.

Moreover, the IRS was on notice that the 1996 protective claim would be supplemented. In fact, in its letter of February 6, 1997, the IRS invited the filing of a supplemental claim. In addition, the IRS knew that an amended return (*i.e.,* a refund claim) would be filed in the event that AmBase elected not to disaffiliate from Carteret. AmBase repeatedly requested the IRS to grant extensions of time to make the disaffiliation decision and explained that it was waiting for

information from the FDIC to permit it to file an amended return after information was provided by the FDIC. AmBase made its last extension request by letter dated December 10, 1996, soon after the FDIC filed the general protective refund claim, and explained in that letter that an amended return would be necessary. *See* Doc. 32-16 pp. 13 and 14. It was shortly thereafter that the IRS invited a supplementation of the original protective claim.

The fact that grounds raised in the protective claim necessarily would have involved an investigation of the bad debt facts that support AmBase's current claim is sufficient in and of itself to establish jurisdiction in this case. However, the fact that the IRS was on notice that an amended return may be filed and that it actually invited a submission of additional information regarding the claim, provides an even stronger reason for holding that the supplemented protective claim was timely filed and is valid. In this type of circumstance, where the IRS in effect considers the claim, it has been held that the IRS waives the requirement that the original claim state the exact basis of the claim. The IRS explained this point in GCM 38376 as follows: "[i]f a refund claim does not contain a sufficient statement of grounds and facts indicating the basis of the claim, it will still be treated as a valid claim if the Service considers the claim on its merits and is thereby deemed to have waived the defect." GCM 38376 (citing *United States v. Andrews*, 302 U.S. 517, 521 (1938); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933); *United States v. Factors & Finance Co.*, 288 U.S. 89 (1933).

### *Conclusion*

For the above stated reasons, AmBase requests that the Court set aside its Conditional Order dismissing the case.

Respectfully submitted,

/s/ Peter H. Winslow
PETER H. WINSLOW [phv02676]
Scribner, Hall & Thompson, LLP
1030 15th Street NW, Suite 700 East
Washington, DC 20005
Telephone: (202) 331-8585
Facsimile: (202) 331-2032
pwinslow@scribnerhall.com

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2010, a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on August 30, 2010, I overnight mailed a paper courtesy copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL to the Court at the address listed below, as required by the Court's Electronic Filing Order (Doc. Ent. 3):

> The Honorable Warren W. Eginton
> Senior United States District Judge
> District of Connecticut
> Brien McMahon Federal Building
> United States Courthouse
> 915 Lafayette Boulevard - Suite 335
> Bridgeport, Connecticut 06604

> /s/ Peter H. Winslow
> PETER H. WINSLOW [phv02676]
> Scribner, Hall & Thompson, LLP
> 1030 15th Street NW, Suite 700 East
> Washington, DC 20005
> Telephone: (202) 331-8585
> Facsimile: (202) 331-2032
> pwinslow@scribnerhall.com