IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMBASE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08CV651-WWE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF AMBASE'S MOTION TO SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL

Defendant United States of America opposes plaintiff AmBase's motion to set aside the dismissal of the above-captioned civil action for refund. Because AmBase still cannot establish the subject matter jurisdiction of the Court, this action should be fully dismissed.

BACKGROUND

AmBase commenced this civil action to seek the refund of an alleged tax overpayment in the amount of $7,162,875, plus applicable interest. AmBase alleged that this overpayment stemmed from a net operating loss that arose in tax year 1992 as a result of a retroactive change to its estimated addition to its reserve for bad debts. It sought to carry back this net operating loss to tax year 1989 to generate the refund.

The United States moved to the dismiss the action for lack of subject matter jurisdiction because AmBase failed to establish that it filed a timely claim for refund raising the issues it seeks to raise in this proceeding, a prerequisite to the Court's jurisdiction under 26 U.S.C. § 7422. *See* Doc. Ent. 29. On June 15, 2010, the Court conditionally granted the United States' motion and dismissed the action. *See* Doc. Ent. 42. As part of that conditional dismissal, the

1

Court granted AmBase a forty-five day period to conduct limited discovery into the June 1995 and September 1996 claims that AmBase alleged, but could not establish, were filed. *See id.* The parties consented to extend that period by thirty days, or until August 30, 2010. *See* Doc. Ents. 43, 44.

During that period of limited discovery, AmBase obtained a copy of a document dated September 13, 1996, sent from the Federal Deposit Insurance Corporation purportedly on behalf of Carteret Federal Savings Bank (New Carteret) to the IRS. AmBase alleges that the September 1996 document constituted a "defective general protective [refund] claim" that was supplemented by AmBase's amended 1992 corporate income tax return that it filed in March 2000. *See* Doc. Ent. 45-1, at 4. In that amended 1992 return, AmBase sought to consolidate New Carteret and to rewrite history by retroactively changing its estimated additions to its reserve for bad debts.

AmBase now has moved to set aside the Court's dismissal of this action based on the purported September 1996 claim. The Court, however, should not set aside its conditional dismissal, and should fully dismiss this action, because the September 1996 document fails to establish the jurisdiction of the Court for three reasons. First, the document filed by the FDIC in September 1996 could not be a claim for refund by AmBase because the FDIC did not have the authority to file a claim on behalf of AmBase in 1996. Second, the purported September 1996 document did not meet the requirements of a formal claim for refund as set forth in the relevant regulations and there was no waiver of the requirements by the IRS because the September 1996 document was not treated as a protective or informal claim by the IRS, and neither AmBase, nor Carteret, nor the FDIC filed a claim that conformed to the regulations, or that was treated as a

protective or informal claim within the limitations period for filing a claim (which expired on March 31, 1998).[1] *See* Doc. Ent. 42 at 10. Thus, under *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 69-73 (1933) *and Solomon v. United States*, 57 F.2d 150, 151-52 (2d. Cir. 1932), AmBase's amended return for tax year 1992, filed in March 2000, could not relate back to or supplement an alleged September 1996 claim because there was no claim to relate back to.

Third, the out-of-time amended return for tax year 1992, filed in March 2000, set forth entirely new grounds from the grounds sought to be raised in the September 1996 document. Under the applicable regulations and Second Circuit precedent – even assuming the alleged September 1996 claim was on behalf of AmBase and had been treated as a protective or informal claim, all of which it was not – AmBase could not raise a different ground for refund in its out-of-time amended return for tax year 1992, filed in March 2000, to supplement the purported September 1996 claim.

For these reasons, AmBase failed to file a timely claim for refund that raised the grounds it uses to support this civil action for refund and, as a result, this action should be fully dismissed.

ARGUMENT

I. *No Claim for Refund Filed by or on Behalf of AmBase Within the Limitations Period*

The FDIC could not have filed a claim for refund on behalf of AmBase in September 1996. Because neither AmBase nor any entity on behalf of AmBase filed a claim for refund within the period to do so, the Court lacks subject matter jurisdiction over this action.

---

[1] The requirements for a valid claim for refund that meets the time requirements set forth by Congress in § 6511 of the Internal Revenue Code are set forth in the regulations under § 6402.

AmBase relies on 26 C.F.R. § 301.6402-7 to support the contention that the FDIC could file refund claims "on behalf of failed financial institutions and their parent corporations." *See* Doc. Ent. 45-1, at 2. The contention overstates the breadth of the FDIC's authority under the regulation. As this Court stated, "[w]here a financial institution is subject to a receivership, the FDIC is permitted to file claims for refund for carrybacks on behalf of a consolidated group that includes the receivership." *See* Doc. Ent. 42, at 11.

When it filed its income tax return for tax year 1992, AmBase made an election to disaffiliate New Carteret. *See* Doc. Ent. 32-3, at 5-6. Because New Carteret was not part of the AmBase consolidated group in September 1996, the FDIC lacked the authority to file a claim for refund on behalf of AmBase. Therefore, the alleged FDIC claim of September 1996 was not and could not have been on behalf of AmBase and AmBase failed to file a claim for refund within the period to do so. For this reason alone the Court lacks subject matter jurisdiction.

II.   *No Document Filed Within the Limitations Period Was Treated as a Protective or Informal Claim*

The IRS could not and did not process the purported claim of September 1996 as a claim for refund, and did not treat it as a protective or informal claim for refund. The IRS informed the FDIC of this by letter in February 1997 when it notified the FDIC that the document could not be processed as a claim for refund. *See* Doc. Ent. 45-6. Neither AmBase, nor Carteret, nor the FDIC filed another document that was or could have been processed or was treated as a protective or informal claim before the period of limitations for doing so expired on March 31, 1998. No claim for refund was timely filed, and no claim for refund was pending on the

4

expiration date for filing claims; thus no claim for refund could be supplemented. As a result, this action should be dismissed for lack of subject matter jurisdiction, even if New Carteret had been affiliated with AmBase in September 1996.

AmBase alleges that the September 1996 document was a "defective general protective claim" that was supplemented by the amended return for tax year 1992 filed in March 2000. *See* Doc. Ent. 45-1 at 4. The September 1996 document, however, failed to meet the requirements of a protective claim or informal claim under *Martin v. United States*, 833 F.2d 655, 660 (7th Cir. 1987). As stated by this Court, "[a] protective claim puts the IRS on notice when it (1) is in fact filed; (2) made in writing; and (3) 'the matter set forth in the writing [is] sufficient to apprise the IRS that a refund is sought and to focus attention on the merits of the dispute so that an examination of the claim may be commenced if the IRS wishes.'" *See* Doc. Ent. 42, at 12; *Martin,* 833 F.2d at 660 (7th Cir. 1987).

The United States does not dispute that the September 1996 document was filed, or that it was in writing. The document, however, fails the third prong of *Martin* because it did not apprise the IRS of the amount of a refund that was sought by AmBase, nor did it present sufficient information to permit the IRS to commence an examination. To the contrary, as the IRS notified the FDIC, the IRS could not process the document as a claim and therefore did not treat the document as a protective or informal claim for refund. Neither AmBase, nor Carteret, nor the FDIC filed another claim for refund before the limitations period expired on March 31, 1998. Thus, there was no refund claim pending at the time that AmBase filed its out-of-time amended return for tax year 1992 in March 2000 and, as a result, that March 2000 claim had nothing to supplement. *See Memphis Cotton Oil*, 288 U.S. at 67.

AmBase nevertheless asserts that the IRS treated the September 1996 document as a "general protective claim" and thereby waived the defectiveness of the document as a claim. AmBase also asserts that because the IRS did not appear to issue a statutory notice of claim disallowance, the claim remained pending at the time AmBase filed its out-of-time amended return for tax year 1992 in March 2000. *See* Doc. Ent. 45-1, at 4, 7. These assertions are without merit, as a letter informing the FDIC that the document cannot be processed as a claim makes clear the IRS did not treat the document as a protective or informal claim for refund from AmBase, the FDIC, or anyone else and, therefore, the IRS could not have and did not examine the claim. Because the document did not constitute a claim for refund within the meaning of the regulations under § 6402 it was not appropriate to issue a statutory notice of claim disallowance. The IRS also did not invite supplementation as suggested by AmBase. *See* Doc. Ent. 45-1, at 6. Instead, the IRS invited the FDIC to file a document that would qualify as a claim. *See* Doc. Ent. 45-6. No other document was timely filed, and there could be no supplement to the document of September 1996 that was not a protective or informal claim for refund in the first place.

As described in *Martin*, "[i]n order to establish that the IRS waived the defects in a claim for refund, 'the showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim.'" *See Martin*, 833 F.3d at 661, *quoting Angelus Milling Co.*, 325 U.S. 293, 297 (1945). Here, what is unmistakable is that the IRS did not treat the document as a protective or informal claim and did not dispense with the formal requirements or examine the merits of the claim. Neither AmBase, nor Carteret, nor the FDIC filed another document before the period of limitations to do so expired. The conclusion is inescapable that the IRS did not treat the September 1996 document as a "general

protective claim" to constitute a waiver; and that AmBase has not and cannot meet its high burden to prove waiver. The IRS did not waive the defectiveness of the alleged claim; it told the FDIC that it could not process the document as a claim for refund.

In cases cited by this Court – *United States v. Kales* and *Memphis Cotton Oil Co.* – the Supreme Court allowed out-of-time claims to amend or supplement previously-filed claims, but its holdings relied on the fact that the IRS waived claim defects by examining the respective claims.[2] *See United States v. Kales*, 314 U.S. 186, 196 (1941) ("Neither the original nor the amended claim has ever been rejected as inadequate by the Commissioner or the Bureau. There has been no objection to the claim on the ground that it was informal, deficient in its content, or untimely."); *United States v. Memphis Cotton Oil*, 288 U.S. 62, 71 (1933) (stating that if the IRS "holds [the claim] without action until the form has been corrected, and still more clearly if he hears it, and hears it on the merits, what is before him is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old"). Here, in contrast, the IRS did not treat the claim as a valid protective or informal one. The IRS sent a letter back to the FDIC informing it that its purported claim was not processable as a claim for refund and concluding that the FDIC could make another attempt to file a valid claim, but neither the FDIC, nor AmBase or Carteret, did so before the limitations period expired.

AmBase failed to timely file a claim for refund and, as a result, the Court lacks subject matter jurisdiction over this action for refund and the action should be fully dismissed.

---

[2] The taxpayers in *Kales* and *Memphis Cotton Oil* also did not face the fatal variance problem that plagues AmBase here. *See* Part III, below.

III.    *No Claim Supplementation on Different Grounds*

Even if the September 1996 document had been filed by AmBase and had been treated as a protective or informal one under *Martin* and *Kales* (which it was not), the amended return for tax year 1992, filed in March 2000, would still fail to establish the subject matter jurisdiction of the Court. This "March 2000 claim" raised different grounds for refund than the September 1996 document. Therefore, the March 2000 claim was a new, out-of-time claim, rather than a supplement to the September 1996 document. AmBase's failure to file a timely claim for refund raising the grounds for relief it now seeks to raise deprives the Court of subject matter jurisdiction.

The applicable treasury regulations provide that

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more grounds set forth in a claim filed before the expiration of such period.

*See* 26 C.F.R. § 301.6402-2(b)(1), *quoted by Weisbart v. United States*, 222 F.3d 93, 98 (2d Cir. 2000). The Second Circuit explains that "'[a] claim seeking refund upon one asserted fact situation may not be amended out of time so as to require an investigation of matters not germane to the original claim.'" *See Weisbart*, 222 F.3d at 98-99, *quoting Sappington v. United States*, 408 F.2d 817, 819 (4th Cir. 1969) *and Pink v. United States*, 105 F.2d 183, 187 (2d Cir. 1939) ("Where the facts upon which the assessment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper.").[3]

---

[3] AmBase repeatedly cites to General Counsel Memorandum 38786 and Chief Counsel Advice 200848045. *See* Doc. Ent. 45-1, at 2, 4, 5, 7. Section 6110(k)(3) of Title 26 of the United States Code prohibits the citations of these materials as precedent.

AmBase's out-of-time March 2000 claim would require an investigation of matters not germane to the purported September 1996 claim, which deprives the Court of subject matter jurisdiction over those new matters under *Weisbart*. In its March 2000 claim, AmBase attempted to add a subsidiary's (New Carteret's) income and expenses for the period December 4, 1992 to December 31, 1992, and to rewrite history by changing, in 2000, its bad-debt reserve for 1992 in order to claim a larger tax deduction.[4] The grounds in the FDIC's purported September 1996 claim on behalf of Carteret have nothing to do with AmBase's March 2000 claim to retroactively increase the estimated additions to its bad debt reserves.

AmBase identified the following grounds from the FDIC's purported September 1996 claim on behalf of Carteret that AmBase asserts was supplemented by its claim of March 2000:

(3)   Savings institutions that fail the "60% asset test" of IRC 7701(a)(19) are not eligible to use the reserve method of accounting for bad debts under IRC 593. Such an institution is treated as a bank and therefore must compute its'[sic] bad debts under IRC 585. If the institution is treated as a "large bank", as defined in IRC 585(c), it must compute its bad debts using the specific charge-off method under IRC section 166. Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback under IRC 172(b)(1)(D), instead of the usual 3. This refund claim includes the carryback of the 1992 losses eligible for a 10 year carryback period under IRC 172(b)(1)(D) to the taxable year of the refund as a result of any required use of the specific charge-off method of accounting for bad debts.

(4)   Under certain conditions, (such as the occurrence of a change in underlying facts under Treas. Reg. 1.446-1(e)(2)(ii)(b)), banks using the reserve method for deducting bad debts under IRC 585(b) can switch to the specific charge-off

---

[4] AmBase could not do this even if the Court had jurisdiction over the claim. As this Court already held, "a taxpayer may not increase its debt reserve retroactively." *See* Doc. Ent. 42, at 10, *citing Rio Grande Bldg. & Loan Ass'n v. Comm'r*, 36 T.C. 657, 664 (1961) ("[A] taxpayer is not to be permitted to enlarge its reserve account retroactively, based on subsequent events which later support the view that the reserve is inadequate."). We concede, however, that the fact that the new grounds would not support a refund determination is not relevant to the issues of whether the Court has jurisdiction to consider the issue.

> method under IRC 166. Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback, as allowed under IRC 172(b)(1)(D), instead of the usual 3. This refund claim represents the carryback of the 1992 losses to the taxable year of the refund to the extent such losses are eligible a 10 year carryback under IRC 172(b)(1)(D) as a result of switching to the specific charge-off method of accounting for bad debts.
>
> (5) Under IRC 6511(d), a taxpayer has 7 years to determine whether a debt or a security has become worthless. In the case of a failing financial institution, management typically refrains from charging off their bad debts in order to artificially retain capital and keep government regulators at bay. This amended return reflects adjustments to deduct debts or securities in the taxable year in which such debts actually became worthless.

*See* Doc. Ent. 45-1, at 3 n.3.

The grounds in the out-of-time March 2000 claim were not germane to any of the grounds in the purported September 1996 claim (assuming that the out-of-time March 2000 claim could supplement the purported September 1996 claim in the first place, given that the purported September 1996 claim was not filed on behalf of AmBase and was not treated by the IRS as a protective or informal claim, see Parts I and II, above). AmBase and Carteret are and have used the reserve method of accounting for bad debts. *See* Doc. Ents. 32-3, at 11-12; 42, at 7-8. In the March 2000 claim, AmBase sought to consolidate Carteret and to rewrite history by reporting a change in additions to its reserve for bad debts that never occured (which this Court already held AmBase could not do). The grounds in the purported September 1996 claim relate to refund claims that could have arisen if Carteret had changed from the reserve method of accounting for bad debts to the specific charge-off method of accounting for bad debts. This never happened; AmBase and Carteret both used the reserve method. Therefore, the grounds of the March 2000 claim were not germane to the grounds of the purported September 1996 claim.

Ground (3) of the purported September 1996 claim attempted to assert a claim for refund

that could have arisen from the carryback of losses in the event that Carteret was required to switch from the reserve method of accounting for bad debts under 26 U.S.C. § 593 to the specific charge-off method of accounting for bad debts under 26 U.S.C. § 166.  As stated above, AmBase and Carteret used the reserve method of accounting for bad debts and were never required to switch to the specific-charge off method.  *See* Doc Ents. 32-3, at 11-12; 42, at 7-8.  In its March 2000 claim, AmBase sought to consolidate Carteret and its bad debt in order to rewrite history by changing, in 2000, its estimated addition to its bad-debt reserve for 1992 and pretending that change occurred in 1992 in order to claim a larger tax deduction; neither AmBase nor Carteret ever had to change from the reserve method to the specific charge-off method.  The grounds of AmBase's March 2000 claim thus had nothing to do with the grounds of the purported September 1996 claim.  Therefore, AmBase's March 2000 claim is not germane to the FDIC's (Carteret's) Ground (3) in the purported September 1996 claim and it cannot establish the Court's jurisdiction.

Similarly, Ground (4) of the purported September 1996 claim attempts to assert a claim for refund that would arise from the carryback of losses in the event that Carteret chose to (rather than being required to) switch from the reserve method of accounting for bad debts under 26 U.S.C. § 593 to the specific charge-off method of accounting for bad debts under 26 U.S.C. § 166.  Again, AmBase and Carteret used the reserve method of accounting for bad debts and never chose to switch to the specific-charge off method.  The grounds in AmBase's March 2000 claim had nothing to do with this ground in the purported September 1996 claim.  Therefore, AmBase's March 2000 claim is not germane to Ground (4) in the FDIC's (Carteret's) purported September 1996 claim.

Ground (5) attempted to assert a claim for refund so that Carteret would have seven years to determine whether a debt had gone bad in order to take a deduction, so that adjustments could be made in the taxable year in which the bad debts actually became worthless. The out-of-time March 2000 claim was not germane to this ground from the purported September 1996 claim for three reasons. First, as this Court explained, "AmBase asserts that its 'claim depends solely on facts that existed at the close of the taxable year.'" *See* Doc. Ent. 42, at 10, *quoting* Doc. Ent. 32-3, at 23. Thus, AmBase had no adjustments to make to deduct debts in the taxable year in which such debts actually became worthless in the event it had deducted them in the wrong year. Instead, in its March 2000 claim, AmBase sought to consolidate Carteret and retroactively increase its estimated addition to its reserve for bad debts. AmBase's March 2000 claim is a different ground, and not germane to, Ground (5) from the FDIC's (Carteret's) purported September 1996 claim, which seeks to deduct bad debts that may have been taken in the wrong year under the specific charge off method.

Second, because both AmBase and Carteret used the reserve method to account for bad debts, the deduction from income occurs when the reserve is increased and neither of them could deduct debts from income in the taxable year in which the debts actually became worthless. Instead, reserve method taxpayers charge off debts that go bad against the reserve account for bad debts. Therefore, Ground (5) is not germane to AmBase's March 2000 claim because neither AmBase nor Carteret could deduct bad debts from income.

Third, even if Ground (5) applied to Carteret as a reserve method taxpayer (which it cannot), this Court already held that "section 6511(d) cannot apply and cannot create jurisdiction in this matter" to give AmBase and Carteret seven years to retroactively increase their bad debt

12

reserves and take a corresponding deduction. *See* Doc. Ent. 42, at 10.

Finally, AmBase suggests that its requests to extend the time to elect whether to consolidate Carteret somehow put the IRS on notice that it would supplement its purported September 1996 claim, even though AmBase elected to consolidate Carteret after the IRS notified the FDIC that the September 1996 document could not be processed as a claim for refund. *See* Doc. Ent. 45-1, at 6-7. This Court already addressed this issue and held that "[t]he fact that plaintiff needed more time to determine whether it would disaffiliate New Carteret does not sufficiently or directly put the IRS on notice that a refund would be sought as to the 1992 tax year." *See* Doc. Ent. 42, at 16. As the Second Circuit explained, "[t]he Service is not expected to be Sherlock Holmes." *See Weisbart*, 222 F.3d at 99; *see also American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920 (Ct. Claims 1963) ("It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer."); *Stoller v. United States*, 444 F.2d 1391, 1393 (5th Cir. 1971) ("The Commissioner should not be left to his own devices in order to discover the precise nature of a taxpayer's claim and thus be placed in the position of having to hazard a guess."). Therefore, the Court lacks subject matter jurisdiction over this action for refund and the action should be fully dismissed.
13

CONCLUSION

The purported September 1996 claim proferred by AmBase fails to establish the jurisdiction of the Court. The Court should not set aside its conditional dismissal of the action, and the action should be fully dismissed for lack of subject matter jurisdiction.

JOHN DiCICCO
Acting Assistant Attorney General
U.S. Dept. of Justice Tax Division

*/s/Alex T. Case*
ALEX T. CASE
Federal Bar No. phv03099
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044-0055
Tel: (202) 307-6499 / Fax: (202) 514-5238
Email: Alex.T.Case@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2010, a copy of the foregoing DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF AMBASE'S MOTION TO SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that on September 20, 2010, I mailed a paper courtesy copy of the foregoing DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFF AMBASE'S MOTION TO SET ASIDE THE COURT'S CONDITIONAL ORDER OF DISMISSAL to the Court at the address listed below, as required by the Court's Electronic Filing Order (Doc. Ent. 3):

>The Honorable Warren W. Eginton
>Senior United States District Judge
>District of Connecticut
>Brian McMahon Federal Building
>United States Courthouse
>915 Lafayette Boulevard - Suite 335
>Bridgeport, Connecticut 06604

>*/s/Alex T. Case*
>ALEX T. CASE
>Trial Attorney, Tax Division
>U.S. Department of Justice
>P.O. Box 55, Ben Franklin Station
>Washington, D.C. 20044-0055