**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AMBASE CORPORATION, : | |
| Plaintiff, : | |
| : | |
| v. : | 3:08-cv-651 (WWE) |
| : | |
| UNITED STATES OF AMERICA, : | |
| Defendant. : | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S**
**MOTION TO SET ASIDE CONDITIONAL ORDER OF DISMISSAL**

Plaintiff AmBase Corporation brings this action against defendant United States

of America seeking a refund of overpaid federal taxes.  The Court previously

conditionally granted defendant United States's motion to dismiss (Doc. #42).  Now

pending before the Court is plaintiff's motion to set aside that ruling (Doc. #45).  For the

reasons which follow, plaintiff's motion will be granted.

**BACKGROUND**

Because the initial motion to dismiss was made pursuant to Rule 12(b)(1), the

Court will review the complaint and the parties' exhibits submitted outside the

pleadings.  See Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d

247, 253 (2d Cir. 2000).

The Court set forth the relevant factual background in its previous decision, and

it will not repeat them here.  In that ruling, the Court found that subject matter

jurisdiction could not be based on (1) 26 C.F.R. §§ 1.593-5(b)(2) or 1.593-6A(a)(1);

(2) the seven-year statute of limitations provided by 26 U.S.C. § 6511(d); or (3) the

three-year statute of limitations provided by 27 U.S.C. § 6511(a).  Plaintiff had asserted

1

that three different filed claims would meet the standards under section 6511(a).  The

Court, however, rejected plaintiff's arguments as to the June 1995 claim, the

September 1996 claim, the informal claim filed on August 30, 1993 and the formal claim

filed in June 2000.  The Court's rejection of the June 1995 claim and the September

1996 claim was based on plaintiff's failure to present these claims to the Court.

Accordingly, the Court permitted plaintiff to conduct limited discovery of defendant into

the June 1995 and September 1996 claims and to present them to the Court.

Plaintiff's current motion relies on the September 1996 claim which it received

from the Internal Revenue Service as part of the permitted discovery.  On September

13, 1996, David Jones of the FDIC submitted a series of protective claims to the IRS.

One such claim was for the tax year ending in December 1992, and it was filed with

protective claims for several other years.  An attachment to the Form 1120X for the tax

year ending in December 1992 stated that:

> 3) Savings institutions that fail the "60% asset test" of IRC 7701(a)(19) are not eligible to use the reserve method of accounting for bad debts under IRC 593.  Such an institution is treated as a bank and therefore must compute its bad debts under IRC 585.  If the institution is treated as a "large bank", as defined in IRC 585(c), it must compute its bad debts using the specific charge-off method under IRC 166.  Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback under IRC 172(b)(1)(D), instead of the usual 3.  This refund claim includes the carryback of the 1992 losses eligible for a 10 year carryback period under IRC 172(b)(1)(D) to the taxable year of the refund as a result of any required use of the specific charge-off method of accounting for bad debts.
>
> 4) Under certain conditions, (such as the occurrence of a change in underlying facts under Treas. Reg. 1.446-1(e)(2)(ii)(b)), banks using the reserve method for deducting bad debts under IRC 585(b) can switch to the specific charge-

off method under IRC 166. Net operating losses attributable to bad debts treated in this manner are eligible for a 10 year carryback, as allowed under IRC 172(b)(I)(D), instead of the usual 3. This refund claim represents the carryback of the 1992 losses to the taxable year of the refund to the extent such losses are eligible a 10 year carryback period under IRC 172(b)(1)(D) as a result of switching to the specific charge-off method of accounting for bad debts.

5) Under IRC 6511 (d), a taxpayer has 7 years to determine whether a debt or a security has become worthless. In the case of a failing financial institution, management typically refrains from charging off their bad debts in order to artificially retain capital and keep government regulators at bay. This amended return reflects adjustments to deduct debts or securities in the taxable year in which such debts actually became worthless.

The regulations under IRC 6402(I) authorize the filing of refund claims by the FDIC as receiver for failed financial institutions. This amended return includes a refund claim under IRC 6402(I).

As a result of the foregoing adjustments to income, taxpayer hereby requests a refund of tax and previously paid interest and penalties in the amount of $1 or such greater amount as it may be entitled, plus interest on the proper amount refunded.

By letter dated February 6, 1997, the IRS informed the FDIC that it was unable to process the claim for the tax years ending on December 31, 1986, 1989, 1990 and 1991. The reason given in the letter was that the supporting information was not complete. The letter told the taxpayer "[i]f you have more information you did not send with this claim, you may file another claim and attach your information."

On March 15, 2000, AmBase filed a supplement to the September 1996 claim, which included amended tax returns for tax years 1989 and 1992.

## DISCUSSION

A motion to dismiss for lack of subject matter jurisdiction may be made at any

3

time.  Plaintiff, as the party asserting federal subject matter jurisdiction, has the burden

of demonstrating that it exists.  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

When evaluating a motion under Rule 12(b)(1), the court "must determine whether or

not the factual predicate for subject matter exists."  Tilley v. Anixter Inc., 283 F. Supp.

2d 729, 733 (D. Conn. 2003).  In a factual attack on the court's jurisdiction, there is no

presumptive truthfulness to the plaintiff's factual allegations.  Russo v. City of Hartford,

184 F. Supp. 2d 169, 178 (D. Conn. 2002).  Therefore, the court may consider evidence

outside the complaint including affidavits and other materials.  See Kamen v. AT&T Co.,

791 F.2d 1006, 1011 (2d Cir. 1986).

     As the Court previously observed, pursuant to 26 U.S.C. § 6511(a), a "[c]laim for

credit or refund of an overpayment of any tax ... in respect of which tax the taxpayer is

required to file a return shall be filed by the taxpayer within 3 years from the time the

return was filed...."  26 U.S.C. § 6511(a).  A protective claim can put the IRS on notice

of an ensuing claim and thus toll the statute of limitations.  United States v. Kales, 314

U.S. 186, 194 (1941).  It does so when it (1) is in fact filed; (2) made in writing; and (3)

"the matter set forth in the writing [is] sufficient to apprise the IRS that a refund is

sought and to focus attention on the merits of the dispute so that an examination of the

claim may be commenced if the IRS wishes."  Martin v. United States, 833 F.2d 655,

660 (7th Cir. 1987); see also Kales, 314 U.S. at 194-96.  The notice must be specific

and cannot be generic.

     AmBase claims that the September 1996 claim tolls the statute of limitations on

this action and thus provides jurisdiction for the Court.

     It is undisputed that the September 1996 claim was indeed filed and made in

writing.  The United States provides three reasons why it could not serve to toll the statute of limitations.  First, the United States argues that the FDIC could not have filed a claim for refund on behalf of New Carteret in 1996 because it had disaffiliated New Carteret in 1992.  Second, the United States asserts that the September 1996 was not treated by the IRS as a protective or informal claim and, therefore, there was no protective claim timely filed.  Finally, the United States claims that the March 2000 claim sought a refund on different grounds than the September 1996 had and, as such, could not supplement the earlier claim.

## I.      Disaffiliation of New Carteret

AmBase's original consolidated 1992 tax return included an election to disaffiliate New Carteret pursuant to Prop. Treas. Reg. § 1.597-4(g).  The FDIC included in its election to disaffiliate a statement that it "reserve[s] the right to review this election when the Reg. § 1.597-4 becomes final."  AmBase received an extension from the IRS to defer its decision whether to disaffiliate until April 30, 1997.  By letter dated April 28, 1997, AmBase withdrew the FDIC's previous decision to disaffiliate New Carteret and elected not to disaffiliate New Carteret for the 1992 tax year.

The United States' statement that the FDIC had elected to disaffiliate New Carteret ignores the FDIC's reservation to change its decision and the later decision not to disaffiliate.  Neither side presents an argument concerning the effectiveness of the FDIC's tentative election to disaffiliate New Carteret on the claim filed in 1996 given AmBase's reversal of its decision to disaffiliate.  Therefore, the Court finds that the FDIC did not elect to disaffiliate New Carteret from the tax group for the year ending December 31, 1992.

## II.     Treatment by the IRS of the 1996 Claim

The United States claims that the IRS rejected the September 1996 claim by

letter dated February 6, 1997.  As stated above, in the letter, the IRS wrote:

> We are unable to process your claim for the tax period(s)
> shown above [tax periods ending December 31, 1986, 1989,
> 1991 and 1990] because your supporting information was not
> complete.  If you have more information you did not send with
> this claim, you may file another claim and attach your
> information.

The government asserts that this constituted rejection of the claim pursuant to 26

U.S.C. § 6532, and AmBase's failure to file a valid claim by March 31, 1998 means that

there is no jurisdiction before the Court now.

After a protective claim is filed, it may be amended at any time until it is rejected.

United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71 (1933).  The rejection of a

claim is governed by 26 U.S.C. § 6532(a), which requires only that a rejection be mailed

by certified or registered mail to the taxpayer.  26 U.S.C. § 6532(a)(1) (discussing

rejection in the context of how long a taxpayer has to assert a claim for refund in federal

court).

Courts have strictly construed the statutory requirement that the notice be sent

by registered or certified mail.  See Thomas v. United States, 166 F.3d 825, 830 (6th

Cir. 1999).  Once that requirement is met, courts have looked to the substance of the

notification rather than the style of it to determine if the taxpayer had sufficient notice of

rejection.  See, e.g., A. G. Reeves Steel Const. Co. v. Weiss, 119 F.2d 472, 476 (6th

Cir. 1941) ("A proper interpretation of the present statute does not make it necessary

that any particular form should be used by the Commissioner in allowing or rejecting a

claim for refund.  If the taxpayer has adequate notice of the Commissioner's action on

the claim, either allowing or rejecting it, such notice is sufficient to start the [running] of

the statute of limitations."); Smith v. United States, 478 F.2d 398, 399 (5th Cir. 1973)

("So long as the taxpayer receives adequate notice of the Commissioner's

disallowance, no particular form of notice is necessary to start the running of the period

of limitations.").

The Court of Appeals for the District of Columbia Circuit has held that a

response by the IRS indicating that it could not process a claim because it was awaiting

some future event is not a rejection of that claim.  See Cohen v. United States, 578

F.3d 1 (2009), aff'g In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig., 539 F.

Supp. 2d 281 (D.D.C. 2008), vacated on other grounds pending hearing en banc, 599

F.3d 652 (D.C. Cir. 2010).  In Cohen, the taxpayer filed a refund claim for excise taxes

previously paid.  Shortly after filing his claim, he received a letter from the IRS stating

that it had received his claim.  A short time later, he received a second letter stating:

"We are unable to process your claim....  The tax is currently a subject in litigation and

additional information will be provided to you as it is received."  The Court of Appeals

found that this language did not indicate a rejection of the claim, only that the matter

would be resolved in the future.

The Court of Appeals distinguished this situation from one where the IRS returns

a claim immediately after submission.  In Gervasio v. United States, 627 F. Supp. 428

(N.D. Ill. 1986), the taxpayer hand-delivered her claim to the local IRS office.  After

conferring with his supervisor, the revenue officer returned the claim, telling the

taxpayer that he could not accept it.  The district court concluded that this constituted a

rejection of the claim because the "IRS officers, through their actions, unequivocally denied the plaintiff's claim." Gervasio, 627 F. Supp. at 431.

As the district court wrote in Cohen, a rejection is made effective when the IRS, "by its actions or representations, puts the ball in the taxpayer's court." Long-Distance Tel., 539 F. Supp. 2d at 297; see also Register Pub. Co. v. United States, 189 F. Supp. 626 (D. Conn. 1960). The rejection should be reviewed in the context of the case. Long-Distance Tel., 539 F. Supp. 2d at 297; Stephens v. United States, 216 F. Supp. 854, 856 (E.D. Ark. 1963). A communication by the IRS that is unresponsive, inconclusive or ambiguous should not be construed as a denial. Long-Distance Tel., 539 F. Supp. 2d at 297.

Here, the Court cannot conclude that the IRS's statement was sufficiently clear as to constitute a denial of the September 1996 claim as it pertained to the 1992 tax year. The IRS stated that the letter applied to the tax periods ending December 31, 1986, 1989, 1990 and 1991, even though claims were submitted for the tax years ending December 31, 1982 through 1992. The exclusion of certain tax years despite claims being submitted leads the Court to conclude that the IRS did not reject the claim for the 1992 tax year.

Therefore, the Court must determine whether the claim for 1992 met the requirements for a protective claim under Martin that a protective claim sufficiently apprise the IRS that a refund is sought and to focus attention on the merits of the dispute so that an examination of the claim may be commenced if the IRS wishes. As the Seventh Circuit Court of Appeals clarified after Martin:

> Different courts have stated that a court must examine the

> writing, or series of writings, in light of all of the existing facts and circumstances to determine whether the IRS had sufficient notice that a taxpayer wished to assert a right with regard to the overpayment of tax. Furthermore, courts believe that the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component.

United States v. Commercial Nat'l Bank, 874 F.2d 1165, 1171 (7th Cir. 1989).

Reviewing the September 1996 claim to the IRS, the Court concludes that it constitutes a valid informal protective claim. The submission identifies the year for which further information would be forthcoming (1992) and states that further forthcoming information would necessitate a further amended tax return. See Pala Employees Profit Sharing Plan v. United States, 234 F.3d 873, 878 (5th Cir. 2000); Stevens v. United States, 2007 U.S. Dist. LEXIS 65049, *12-13 (N.D. Cal. 2007); see also Kales, 314 U.S. at 195-96.

Because the IRS did not properly and formally reject the September 1996 claim and the claim appropriately informed the IRS that an amended claim would be forthcoming, the Court finds that the September 1996 claim was a properly filed informal claim under Martin. Plaintiff should not be punished now for the IRS's failure to treat its claim appropriately.

## III.    Effect of the March 2000 Claim

Treasury Regulation § 301.6402-2(b)(1) provides, in pertinent part:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period.

Pursuant to this regulation, a protective claim may be amended out of time provided

that the amendment is "germane to the original claim."  Weisbart v. United States Dep't

of Treasury, 222 F. 3d 93, 99 (2d Cir. 2000); see also Pink v. United States, 105 F.2d

183, 187 (2d Cir. 1939) ("Where the facts upon which the amendment is based would

necessarily have been ascertained by the commissioner in determining the merits of the

original claim, the amendment is proper.").

The United States argues that the purported March 2000 amended claim asserts

new grounds than those provided by September 1996 claim.  In the Form 1120X filed

by AmBase in 2000, AmBase explained the changes as follows:

> This consolidated income tax return is being amended to include additional 1992 activity related to Carteret Savings Bank.  The activity of Carteret Savings Bank subsequent to its placement in conservatorship by the RTC was not included in the originally filed and adjusted 1992 consolidated income tax return.  The facts surrounding some transactions are not known in complete detail due to the placement of Carteret Savings Bank in RTC conservatorship.  Therefore some computations are based on information provided to AmBase by the RTC.  See the summary schedules attached of the adjustments made to Carteret Savings Bank 1992 taxable income and deductions.
>
> The taxpayer has treated the federal financial assistance as prescribed in the Regulations under Internal Revenue Code Section 597.  The taxpayer believes that the provision of the Regulations best reflect the intentions of Congress in enacting Section 597.  The regulations were filed in final form with the Federal Register on December 20, 1995.
>
> Pursuant to IRC Code Section 6511(d), Limitation on Credit or Refund, taxpayer is carrying back additional bad debts that arose in 1992 to the 1989 tax year.  Internal Revenue Code Section 6511(d)(1), extends the statute of limitations for carrying back a bad debt to 7 years from the filing date of the return for the year of the net operating loss which results in the carryback (without regard to extensions).  In the taxpayer's case, the 1992 income tax return was due March 15, 1993.

Plaintiff asserts that these adjustments are germane to Ground (5) of the September 1996 claim. Plaintiff represents that the adjustment was necessary to reflect New Carteret's bad debts that became worthless in December 1992 that had been omitted from the 1992 tax return. It further contends that Ground (5) was a discussion of this situation.

The Court finds that the March 2000 claim to be germane to the September 1996. They both address the worthlessness of bad debts and whether AmBase, after filing a claim in 1996 and electing not to disaffiliate New Carteret, could adjust its bad debt reserve. In this sense, the March 2000 claim relates back to the September 1996 claim and is, thus, timely filed. As indicated above, the attachment to the September 1996 claim indicated that the return "may be amended when additional relevant information is discovered." The March 2000 claim is that amendment.

In light of this, the Court concludes that AmBase, through the FDIC, timely filed a conditional claim for refund in September 1996 that protected its right to file another claim at a later time. The September 1996 claim as it pertained to the 1992 tax year was never rejected by the IRS. In March 2000, AmBase properly filed a formal claim for refund that related back to the tax year for 1992. As such, the Court has jurisdiction over this matter. The Court will grant plaintiff's motion to set aside the conditional order of dismissal.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff AmBase's motion to set

aside the conditional order of dismissal (Doc. #45).

Dated at Bridgeport, Connecticut, this 28th day of February, 2011.


                                        /s/
                                   Warren W. Eginton
                                   Senior United States District Judge