UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMBASE CORPORATION, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:08-cv-651-WWE |
| | : | |
| UNITED STATES OF AMERICA | : | |
|     Defendant. | : | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff AmBase Corporation ("AmBase") seeks a refund of federal income tax and interest for 1989 attributable to AmBase's attempt to increase its bad debt deduction for 1992. In its memorandum of decision filed on November 30, 2011, the Court granted in part and denied in part plaintiff's previous motion for partial summary judgment and held: "Plaintiff is entitled to amend its bad debt deduction. However, any additional bad debt deduction is limited to an amount necessary to offset any net increase in taxable income resulting from the adjustment to plaintiff's federal income tax return."

Plaintiff now moves for an order holding that AmBase is entitled to increase its bad debt deduction reported on its original return in the additional amount of $69,247,873. For the following reasons, plaintiff's motion will be denied.

**BACKGROUND**

Carteret was one of the largest savings and loan associations in New Jersey, and was the 19th largest savings and loan association in the country. AmBase acquired Carteret in 1988. On December 4, 1992, the Office of Thrift Supervision ("OTS") seized Carteret and placed it into conservatorship with the Resolution Trust Corporation ("RTC") for its failure to satisfy capital requirements under the Financial Institutions Reform, Recovery, and Enforcement Act

1

("FIRREA").

In August 1993, after the seizure, AmBase filed its consolidated income tax return for tax year 1992. In that return, AmBase reported the activities of Carteret for the period starting January 1, 1992 through December 4, 1992 (OTS seized Carteret on December 4, 1992). The return did not include the activity of Carteret during the period it was seized and included a statement, pursuant to 26 C.F.R. § 1.597-4(g), that elected to exclude the activities of Carteret for the period that it was seized by the OTS.

AmBase received an extension from the IRS to defer its final decision whether to disaffiliate until April 30, 1997. Disaffiliation would prevent Carteret's activities from December 5, 1992 through December 31, 1992 from affecting Ambase's tax obligations. By letter dated April 28, 1997, AmBase elected not to disaffiliate Carteret for the 1992 tax year and informed the IRS that an amended claim would be forthcoming. The inclusion of Carteret in AmBase's consolidated income tax return for the period December 5 through December 31, 1992, increased taxable income by a net amount of $3,896,329.

In March 2000, AmBase filed a formal claim for tax refund that related back to the 1992 tax year. The claim addresses bad debts on Carteret's books and whether AmBase, after electing not to disaffiliate, could adjust its bad debt reserve for 1992. Plaintiff argues that it should be entitled to make the maximum retroactive addition to its bad debt reserve for 1992 of $69,247,873 and that this increase results in a net operating loss for 1992 that may be carried back to tax year 1989 to generate a tax refund. Defendant contends that plaintiff may not increase its bad debt reserve retroactively beyond the $3,896,329 necessary to offset the corresponding increase in income resulting from plaintiff's election not to disaffiliate.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is

sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

### **Capital Loss Carryback**

On its original tax return for 1992, plaintiff reported an ordinary loss of $12,837,065 and a capital loss of $99,993,000.  Contemporaneous with the filing of the 1992 return, plaintiff filed a Form 1139, Corporation Application for Tentative Refund, and attempted to carryback both of these losses to tax year 1989.

The IRS audited plaintiff's 1992 tax return and issued a report dated February 12, 1996.  In that report, the IRS made adjustments that reduced the ordinary loss claimed on the original return by $777,836 and entirely disallowed the capital loss of $99,993,000 which had been carried back to 1989.  Although it did not mention it in its previous motion for summary judgment, plaintiff now aims to use the disallowance to justify increasing its bad debt reserves retroactively.

As mentioned above, AmBase received an extension from the IRS to defer its final decision whether to disaffiliate until April 30, 1997.  Plaintiff's final decision, not to disaffiliate, meant that Carteret's activities from December 5, 1992 through December 31, 1992 would affect Ambase's tax obligations.

The inclusion of Carteret in AmBase's consolidated income tax return is unrelated to the disallowance of capital loss carrybacks because that disallowance would have occurred regardless of plaintiff's affiliation decision.  Nonetheless, plaintiff argues that because the disallowance was *an adjustment* to plaintiff's federal income tax return, plaintiff is entitled to amend its bad debt deduction to offset the disallowance.  Furthermore, as the capital loss

disallowance of $99,993,000 exceeds the maximum retroactive addition to its bad debt reserve for 1992, plaintiff asserts that it should be able to fully utilize the maximum debt reserve of $69,247,873.  However, not every imaginable adjustment to a taxpayer's return justifies allowing the taxpayer to modify its bad debt reserves.

   Treasury Regulation § 1.593-5(b)(2) provides:

> If an adjustment with respect to the income tax return for a taxable year is made, and if such adjustment (whether initiated by the taxpayer or the Commissioner) has the effect of *permitting an increase, or requiring a reduction*, in the amount claimed on such return as an addition to the reserve for losses on nonqualifying loans or to the reserve for losses on qualifying real property loans, then the amount initially credited to such reserve for such year . . . may have to be increased or decreased, as the case may be, *to the extent necessary to reflect such adjustment*.  (emphasis supplied).

   Both parties agree that an addition to plaintiff's bad debt reserve for the 1992 tax year is not a *necessary* result of the $99,993,000 capital loss disallowance.  However, in Revenue Ruling 70-5, the IRS acquiesced to a more liberal interpretation of Treasury Regulation § 1.593-5(b)(2).  The Revenue Ruling provides that "the taxpayer may increase its reasonable addition to its reserve for losses on qualifying real property loans in an amount sufficient to offset taxable income, as redetermined, as a result of the subsequent adjustment by the Service to the taxpayer's Federal income tax return disallowing as a deduction an item other than the taxpayer's bad debt deduction."  Thus, the IRS has expanded the scope of Treasury Regulation § 1.593-5(b)(2) by permitting taxpayers to make an offsetting adjustment tied to an objectively measurable *deduction* when the taxpayer had initially demonstrated an intent to offset income using its reserve for losses.  A capital loss carryback is not a deduction.

   Although the IRS has liberally interpreted Treasury Regulation § 1.593-5(b)(2) to allow

disallowed deductions for the tax year in question to be offset through additions to bad debt reserves, no similar treatment is due disallowed capital loss carrybacks to preceding tax years. Plaintiff implicitly attempts to analogize disallowed capital loss carrybacks to disallowed deductions in that they are both adjustments.  However, as defendant points out, the disallowance of the $99,993,000 capital loss did not affect taxable income for tax year 1992.  A capital loss is not a deduction or net operating loss.  Capital losses may only be used to reduce capital gains.  26 U.S.C. § 1211(a).  AmBase reported no capital gains for tax year 1992, so capital losses did not affect taxable income for tax year 1992.  The Court's previous ruling allowed an additional bad debt deduction to the extent that the consolidated adjustment to the 1992 tax return caused AmBase's taxable income for 1992 to increase.  This objective standard would prevent arbitrary adjustment to the reserve for bad debts to suit a taxpayer's own purposes.  Importantly, this standard does not significantly extend the boundaries of the liberal interpretation of Treasury Regulation § 1.593-5(b)(2) provided by the IRS in Revenue Ruling 70-5.

      Plaintiff contends that this action has always been about a refund of tax for 1989 and that a refund of tax for 1992 is not at issue.  The Court agrees.  However, plaintiff has not met its burden of establishing a basis for broadening the category of tax return adjustment for which taxpayers may retroactively increase its bad debt reserve to the maximum statutory level.

      Therefore, as plaintiff has failed to present evidence substantiating its claim for a refund beyond that necessary to offset the increase in income resulting from plaintiff's election not to disaffiliate Carteret, its motion for partial summary judgment will be denied.

## **CONCLUSION**

For the foregoing reasons, plaintiff's partial motion for summary judgment [Doc. # 57] is DENIED.

Dated this 23rd day of May, 2012 at Bridgeport, Connecticut.

                                             /s/
                                      WARREN W. EGINTON
                                      SENIOR UNITED STATES DISTRICT JUDGE